1
2
3
4
5
6
7

8                     UNITED STATES DISTRICT COURT

9                     CENTRAL DISTRICT OF CALIFORNIA

10

| | | |
|---|---|---|
| LINDSEY A.S., | ) | Case No. SA CV 19-94-SP |
|            Plaintiff, | ) | |
| | ) | |
|        v. | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| ANDREW M. SAUL, Commissioner of | ) | |
| Social Security Administration, | ) | |
| | ) | |
|           Defendant. | ) | |
| | ) | |
| _____ | ) | |

**I.**

**INTRODUCTION**

On January 18, 2019, plaintiff Lindsey A.S. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of disabled child's insurance benefits ("DCIB") for an adult disabled since childhood.  The parties have fully briefed the matters in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents three disputed issues for decision: (1) whether the

1

Administrative Law Judge ("ALJ") erred in assessing plaintiff's impairments at step two and in determining her residual functional capacity ("RFC"); (2) whether the ALJ erred at step three; and (3) whether the ALJ properly considered plaintiff's subjective complaints. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 4-11; *see* Defendant's Memorandum in Support of Defendant's Answer ("D. Mem.") at 1-9; Plaintiff's Reply ("Reply") at 2-8.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ erred when he failed to account for plaintiff's severe impairment of cerebral palsy at step two and in the RFC determination, and when he discounted plaintiff's subjective symptom testimony. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated herein.

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 11 years old on September 1, 1990, the alleged disability onset date, is a college graduate who also completed an esthetician program. AR at 39, 49, 58, 450. She has no past relevant work. *Id.* at 53.

On July 23, 2015, plaintiff filed an application for SSI due to epilepsy, cerebral palsy, facial tics, foot deformity, and depression. *Id.* at 193-98. The application was denied initially, after which plaintiff filed a request for a hearing. *Id*. at 73-79. Subsequently, on April 3, 2017, plaintiff filed an application for DCIB. *Id.* at 208-11.

On October 4, 2017, the ALJ held a hearing. *Id*. at 34-57. Plaintiff, represented by counsel, appeared and testified at the hearing. *Id*. The ALJ also heard testimony from Dr. Martin Brodwin, a vocational expert. *See id*. at 53-56. On December 19, 2017, the ALJ awarded plaintiff SSI benefits, finding her

1  disabled beginning July 23, 2015, but denied plaintiff's claims for DCIB benefits.
2  *Id*. at 15-26.

3        In order for a claimant 18 years of age or older to qualify for DCIB, she
4  must demonstrate she had a disability that began before turning 22 years of age.  20
5  C.F.R. § 404.350(a)(5).  Here, before applying the well-known five-step sequential
6  evaluation process, the ALJ determined plaintiff must establish her disability prior
7  to July 15, 2001, when she attained the age of 22.  AR at 17.

8        The ALJ then found, at step one, that plaintiff had not engaged in substantial
9  gainful activity since the alleged onset date.  *Id*.

10       At step two, as relevant here, the ALJ found that through July 15, 2001,
11 plaintiff suffered from the severe impairment of a seizure disorder.  *Id.* at 18.

12       At step three, the ALJ found plaintiff's impairments, whether individually or
13 in combination, did not meet or medically equal one of the listed impairments set
14 forth in 20 C.F.R. part 404, Subpart P, Appendix 1 ("Listing").  *Id.* at 20.

15       The ALJ then assessed plaintiff's RFC,[1] and determined that through July
16 15, 2001, plaintiff had the RFC to perform a full range of work at all exertional
17 levels, but with the nonexertional limitations that plaintiff was precluded from:
18 climbing ladders, ropes, and scaffolds; working at unprotected heights; working
19 around dangerous moving machinery; and driving automotive equipment at work.
20 *Id.* at 21.  The ALJ further found plaintiff had no limitations in the ability to:
21 understand, remember, and carry out simple and complex instructions; interact
22 with supervisors, coworkers, and the general public; and respond appropriately to

23

24       [1]  Residual functional capacity is what a claimant can do despite existing
25 exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155-
26 56 n.5-7 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation,
   the ALJ must proceed to an intermediate step in which the ALJ assesses the
27 claimant's residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151
28 n.2 (9th Cir. 2007).

1    usual work situations or changes in a routine work setting.  *Id*.

2          At step four, the ALJ found plaintiff had no past relevant work.  *Id*. at 24.

3          At step five, the ALJ found that through July 15, 2001, there were jobs that

4    existed in significant numbers in the national economy that plaintiff could have

5    performed, including product packer, product assembler, and product gluer/labeler,

6    prior to age 22.  *Id*. at 24-25.  Consequently, regarding the DCIB application, the

7    ALJ concluded plaintiff was not disabled as defined by the Social Security Act at

8    any time prior to attaining age 22.  *Id*. at 25-26.

9          Plaintiff filed a timely request for review of the ALJ's denial of the DCIB

10   application.  *Id.* at 189-92.  Plaintiff submitted additional evidence for the Appeals

11   Council to consider, consisting of a disability verification form by Dr. Perry

12   Lubens dated September 29, 1998, a letter from Dr. Lubens dated June 28, 2000,

13   and a letter by Dr. Lubens dated March 7, 2018.  *Id.* at 5, 846-49.  The Appeals

14   Council denied the request for review on November 30, 2018.  *Id.* at 1-3.  The

15   ALJ's decision stands as the final decision of the Commissioner.

16                                    **III.**

17                          **STANDARD OF REVIEW**

18         This court is empowered to review decisions by the Commissioner to deny

19   benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security

20   Administration must be upheld if they are free of legal error and supported by

21   substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)

22   (as amended).  But if the court determines the ALJ's findings are based on legal

23   error or are not supported by substantial evidence in the record, the court may

24   reject the findings and set aside the decision to deny benefits.  *Aukland v.*

25   *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d

26   1144, 1147 (9th Cir. 2001).

27         "Substantial evidence is more than a mere scintilla, but less than a

28
                                       4

preponderance." *Aukland*, 257 F.3d at 1035.  Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459.  To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

**A.**   **The ALJ Failed to Properly Consider Plaintiff's Cerebral Palsy at Step Two and in the RFC Determination.**

Plaintiff contends the ALJ erred at step two when, contrary to medical evidence, he failed to find plaintiff had the severe impairments of cerebral palsy, dyscognitive seizures, severe fatigue, major depressive disorder, facial tics and tremors, and medication side effects.  P. Mem. at 4-6; Reply at 2-4.  Plaintiff further suggests that the ALJ's errors in evaluating the medical evidence resulted in an improper RFC determination.  P. Mem. at 8; Reply at 2-4.

At step two, the Commissioner considers the severity of the claimant's impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "An impairment or combination of impairments

1    can be found not severe only if the evidence establishes a slight abnormality that

2    has no more than a minimal effect on an individual's ability to work." *Id.* (citation

3    and quotation marks omitted).

4          Here, at step two, the ALJ found that prior to July 15, 2001, plaintiff's only

5    severe impairment was a seizure disorder.  AR at 18.  Beginning on the alleged SSI

6    onset date of July 23, 2015, the ALJ determined that plaintiff had the severe

7    impairment of medically refractory epilepsy, secondary to polymicrogyria with

8    cerebral palsy, status post vagus nerve stimulator ("VNS") implantation.  *Id.*  The

9    ALJ found plaintiff had been diagnosed with cerebral palsy and clinical findings of

10   right hemiparesis, but he determined that there was no evidence that plaintiff had

11   been diagnosed with cerebral palsy prior to the VNS implantation in December

12   2015.  *Id.*  The ALJ further found that plaintiff did not have a mental impairment

13   prior to July 15, 2001, and her foot deformity was a non-severe impairment.  *Id.* at

14   18-19.

15         With regard to plaintiff's cerebral palsy, there is substantial evidence in the

16   medical record that plaintiff had cerebral palsy prior to July 15, 2001, which was

17   unrelated to the VNS implant.  As the ALJ notes, plaintiff's medical records from

18   2017 reflect that plaintiff had cerebral palsy that caused right hemiparesis.  *Id.* at

19   18, 726, 738.  The records, however, do not indicate that she acquired her cerebral

20   palsy at that time.  Rather, Dr. Laura Kalayjian, plaintiff's treating physician,

21   clarified in a 2017 letter that plaintiff's epilepsy and cerebral palsy was "due to a

22   *congenital* brain deformity known as schizencephaly or biparietal polymicrogyria."

23   *Id.* at 844 (emphasis added).  Moreover, plaintiff's medical records prior to age 22

24   reflect plaintiff's cerebral palsy and impairments.  A medical report from May

25   1991, when plaintiff was 11 years old, indicates an MRI conducted on plaintiff

26   showed she had "bilateral fused (closed-lip) schizencephaly," the same brain

27   malformation that Dr. Kalayjian identified as the cause of plaintiff's cerebral palsy.

28

1   *Id.* at 657.  In treatment progress notes prior to 2001, plaintiff's treating physician

2   Dr. Lubens further reported that plaintiff exhibited a mild right hemiparesis.  *Id.* at

3   633-34, 647.  Finally, although not considered by the ALJ, a disability verification

4   report from Dr. Lubens dated September 29, 1998 stated that plaintiff had a

5   diagnosis of cerebral palsy with a mild right hemiparesis.  *Id.* at 846; *see Brewes v.*

6   *Comm'r of SSA*, 682 F.3d 1157, 1162-63 (9th Cir. 2012) (finding that additional

7   evidence submitted to and reviewed by the Appeals Council becomes part of the

8   record).  Thus, it is clear from the medical record that plaintiff had cerebral palsy

9   causing right hemiparesis prior to her turning 22, a point which defendant

10  effectively concedes.  *See* D. Mem. at 2.

11          The next issue then is whether plaintiff's impairment of cerebral palsy was

12  severe prior to July 15, 2001.  The ALJ found plaintiff's cerebral palsy was a

13  severe impairment beginning on July 23, 2015.  AR at 18.  There is nothing in the

14  record to support finding plaintiff's congenital cerebral palsy was severe after 2015

15  but not prior to 2001; instead, as discussed, the ALJ appeared to make this finding

16  based on mistaken belief plaintiff only acquired cerebral palsy in 2015 after she

17  underwent VNS implantation.  *See id.*  Indeed, both the medical record and

18  plaintiff's testimony reflect the same impairments stemming from plaintiff's

19  cerebral palsy, including issues with balance and cognition, prior to July 15, 2001

20  and after July 23, 2015.  *See id.* at 47-50, 652-53, 721, 844, 846-69.  Therefore,

21  plaintiff's cerebral palsy was a severe impairment prior to age 22, and the ALJ

22  erred at step two.

23          An error at step two may be harmless where, as here, step two was otherwise

24  decided in plaintiff's favor.  *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir.

25  2005).  This is only the case, however, where the ALJ nonetheless considered the

26  impairment in the RFC determination.  *See Lewis v. Astrue*, 498 F.3d 909, 911

27  (finding step two error harmless when the ALJ considered the impairment at step

28

7

four); *see also* Social Security Ruling ("SSR") 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").  Here, plaintiff's RFC does not include any limitations related to plaintiff's physical and cognitive impairments from cerebral palsy.  Although the ALJ stated that he considered all symptoms in reaching his RFC determination, it appears that he focused solely on plaintiff's seizure disorder, the only severe impairment he found plaintiff had prior to age 22.  *See* AR at 21-22.

Defendant contends that the ALJ's error was harmless because there is no evidence that plaintiff required additional limitations due to her cerebral palsy that would change her RFC.  D. Mem. at 2-3.  That may be the case for plaintiff's physical impairments.  Despite observing numerous physical impairments from her cerebral palsy, including poor balance, right side weakness, and tics, plaintiff's treating physicians did not opine that these physical impairments caused any functional limitations.  AR at 652-53, 721, 844, 846-49.  But the same cannot be said for plaintiff's cognitive limitations.  In her 2017 letter, Dr. Kalayjian stated that plaintiff had cognitive impairments from her congenital brain deformity, and she opined that plaintiff would not be able to keep pace in a normal work environment due to trouble with her memory and concentration.  *Id.* at 844.  This functional limitation in maintaining pace is supported by the medical record, including Dr. Lubens's disability verification report to plaintiff's college in which he stated that plaintiff had learning disabilities related to speech, language, and processing speed that required accommodations for exams and tutoring, and a neurological examination from plaintiff's childhood that reflects she had trouble in school and spoke slowly with dysarthria.  *Id.* at 657-58, 846.  Thus, if the ALJ had considered the medical evidence and opinions about plaintiff's cognitive limitations from her congenital cerebral palsy, his RFC determination may have been different.

1  Finally, plaintiff contends the ALJ failed to consider other severe

2  impairments, including dyscognitive seizures, severe fatigue, medication side

3  effects, major depressive disorder, and facial tics and tremors.  P. Mem. at 6, 8.  In

4  fact, the ALJ did find plaintiff's seizure disorder a severe impairment at step two

5  and accounted for plaintiff's seizures in the RFC determination.  AR at 18, 21.

6  Nonetheless, as discussed below, the ALJ erred in discounting plaintiff's subjective

7  complaints about her dyscognitive seizures, including her fatigue and medication

8  side effects, which may require additional RFC limitations.  As for her claims of

9  depression, facial tics, and tremors prior to age 22, neither plaintiff nor her treating

10  physicians alleged any functional limitations that would have changed the RFC

11  determination.  Thus, the court need not reach the issue of whether the ALJ erred in

12  considering these impairments at step two, because any error would have been

13  harmless.  *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("[A]n ALJ's

14  error is harmless where it is 'inconsequential to the ultimate nondisability

15  determination.'").

16  Accordingly, the ALJ erred at step two in not finding plaintiff suffered from

17  the severe impairment of cerebral palsy and failing to properly consider this

18  impairment in determining plaintiff's RFC prior to age 22.

19  **B.     The ALJ Did Not Err at Step Three**

20  Plaintiff argues the ALJ erred in evaluating medical opinions, but focuses this

21  argument on whether the ALJ erred at step three.[2]  P. Mem. at 6.  Specifically,

22  plaintiff contends the ALJ should have considered her testimony and the opinion of

23

24  [2]     In plaintiff's Reply, she argues, for the first time, that the ALJ erred in
    discounting the opinions of treating physicians Drs. Lubens and Kalayjian,

25  seemingly in reaching the RFC determination.  Reply at 4-6.  Because these
    arguments were not raised in the first instance in plaintiff's Memorandum, they are

26  waived.  *See Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010) (holding that

27  "arguments raised for the first time in a reply brief are waived").

28

1   treating physician Dr. Kalayjian in deciding whether she met Listing 11.02(B) for
2   dyscognitive seizures.

3         At step three, the ALJ determines whether a claimant's impairments,
4   individually or in combination, meets or equals a Listing.  *See* 20 C.F.R.
5   §§ 404.1520(d), 416.920(d).  An impairment meets a Listing if it meets all of the
6   criteria of a listed impairment.  *See* 20 C.F.R. §§ 404.1525(d), 416.925(d); *Sullivan*
7   *v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990).  An
8   impairment equals a Listing if the medical findings are equal in severity to all the
9   criteria of a listed impairment.  *See Sullivan*, 493 U.S. at 531.  The claimant has the
10  burden of proving he or she met or equaled a Listing.  *Hoopai v. Astrue*, 499 F.3d
11  1071, 1074 (9th Cir. 2007).  The claimant must set forth the evidence that would
12  support a finding he or she met or equaled a Listing.  *Burch*, 400 F.3d at 683.

13        "An ALJ must evaluate the relevant evidence before concluding that a
14  claimant's impairments do not meet or equal a listed impairment."  *Lewis v. Apfel*,
15  236 F.3d 503, 512 (9th Cir. 2001).  The ALJ is not, however, required to discuss the
16  evidence supporting the step three determination in a "Step Three Findings" section
17  itself.  *Id.* at 513.  Instead, the ALJ can meet this requirement by discussing the
18  relevant evidence supporting the step three determination anywhere in the decision.
19  *Id.*

20        Listing 11.02 requires a finding of disability for an individual who has
21  epilepsy, which must be "documented by a detailed description of a typical seizure"
22  and characterized by one of the additional requirements in 11.02(A)-(D).  Listing
23  11.02.  Section 11.02(B) requires the individual have dyscognitive seizures
24  "occurring at least once a week for at least 3 consecutive months despite adherence
25  to prescribed treatment."  Listing 11.02(B) (citations omitted).

26        Here, the ALJ found that plaintiff's dyscognitive seizures did not occur at the
27  frequency required by the Listing.  AR at 20-21.  Although the ALJ did not provide

10

any further explanation in that section, he described later in his decision how plaintiff's medical records preceding July 15, 2001 did not state the frequency of her dyscognitive seizures. *Id.* at 22; *see also Lewis,* 236 F.3d at 513. As described in greater detail below, those records reflect that plaintiff reported "funny feelings" on four occasions between 1996 and 1998, but there is no information provided about how regularly plaintiff felt those feelings. AR at 636, 639. As plaintiff argues, Dr. Kalayjian's medical source statement indicates that the funny feelings plaintiff reported to Dr. Lubens from 1996 to 1998 were, in fact, dyscognitive seizures. P Mem. at 7. Even so, Dr. Lubens's records still do not indicate how frequently the dyscognitive seizures occurred in order to establish plaintiff met the strict requirements of the Listing.

The court would note that Dr. Kalayjian's medical source statement from September 2017 indicates that plaintiff's seizures beginning in December 1990 met Listing 11.02(C). AR at 844. Listing 11.02(C) refers to generalized tonic-clonic seizures with an accompanying marked limitation, but Dr. Kalayjian appears to exclusively discuss dyscognitive seizures. *Id.* Dr. Kalayjian stated that her finding was based on Dr. Lubens's records, which she found indicated that plaintiff had dyscognitive seizures every few days. *Id.* Dr. Lubens's medical records, however, are inconsistent as to the frequency of plaintiff's dyscognitive seizures. In a May 1991 report, Dr. Lubens stated that plaintiff's seizures occurred every few days since December 1990, which would meet the Listing 11.02(B) frequency. *Id.* at 657. But one month later, Dr. Lubens reported that plaintiff's seizures occurred every 14 days since December 1990, which would not meet the Listing 11.02(B) frequency. *Id.* at 654. Therefore, these records do not provide substantial evidence to find plaintiff met the strict requirements of Listing 11.02(B).

Finally, plaintiff contends the ALJ should have accounted for her testimony that she experienced weird or funny feelings – later determined to be dyscognitive

1    seizures – several times a week prior to age 22.  P Mem. at 7.  But plaintiff's

2    testimony alone, without supporting medical evidence, does not provide substantial

3    evidence to establish the frequency required to meet Listing 11.02(B).  *See*

4    *Hamilton v. Astrue*, 2010 WL 3748744, at *7 (C.D. Cal. Sept. 22, 2010) (finding

5    that plaintiff's self-reports of symptoms and functional limitations could not raise

6    the severity of her impairment to meet a Listing).

7           Accordingly, the ALJ did not err at step three in finding plaintiff's seizures

8    did not meet or equal Listing 11.02(B).

9    **C.     The ALJ Did Not Offer a Clear and Convincing Reason for Discounting**

10          **Plaintiff's Subjective Complaints**

11          Plaintiff contends the ALJ failed to properly consider her subjective symptom

12   testimony, including her alleged symptoms of fatigue and side effects from her

13   medications.  P. Mem. at 8-9.  Specifically, plaintiff argues the ALJ did not provide

14   clear and convincing reasons for rejecting her testimony.  *Id.* at 9.

15          Plaintiff testified at the administrative hearing that between the ages of 18

16   and 22, she reported to her doctor that she felt "weird," which meant she felt dizzy,

17   she would fall, her arms and legs would fall asleep, she felt different tastes in her

18   mouth, she could not carry things and would drop things, and it was difficult for her

19   to walk.  AR at 44-46.  She testified that these feelings lasted from 30 minutes to

20   several hours, and would occur at least twice a week.  *Id.* at 46, 48.

21   In high school, she would lie down until it went away.  *Id.* at 44-45.  In college, she

22   would sleep every day after class, and sometimes she could not go to class.  *Id.* at

23   45-46.  She reported that her doctors told her she always felt tired because of her

24   medication.  *Id.* at 40.  Plaintiff further testified that because of issues with her

25   balance, she tripped approximately 10 times a week and fell four times a week.  *Id.*

26   at 50.  She also testified that in college, she received accommodations because she

27   was slow taking tests and had trouble taking notes and understanding instructions

28

1   from her teachers.  *Id.* at 47-48.

2       The ALJ must make specific credibility findings, supported by the record.

3   SSR 96-7p.  To determine whether testimony concerning symptoms is credible, the

4   ALJ engages in a two-step analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36

5   (9th Cir. 2007).  First, the ALJ must determine whether a claimant produced

6   objective medical evidence of an underlying impairment "'which could reasonably

7   be expected to produce the pain or other symptoms alleged.'"  *Id.* at 1036 (quoting

8   *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  Second, if there

9   is no evidence of malingering, an "ALJ can reject the claimant's testimony about

10  the severity of her symptoms only by offering specific, clear and convincing

11  reasons for doing so."  *Smolen*, 80 F.3d at 1281; *accord Benton v. Barnhart*, 331

12  F.3d 1030, 1040 (9th Cir. 2003).  The ALJ may consider several factors in weighing

13  a claimant's testimony, including:  (1) ordinary techniques of credibility evaluation

14  such as a claimant's reputation for lying; (2) the failure to seek treatment or follow

15  a prescribed course of treatment; and (3) a claimant's daily activities.  *Tommasetti*

16  *v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

17      At the first step, the ALJ found plaintiff's medically determinable

18  impairments could reasonably be expected to cause some of the symptoms alleged.

19  AR at 22.  At the second step, because the ALJ did not find any evidence of

20  malingering, the ALJ was required to provide clear and convincing reasons for

21  discounting plaintiff's testimony.  Here, the only reason provided by the ALJ for

22  discrediting plaintiff's subjective symptom testimony was that it was not supported

23  by the objective medical evidence.  *Id*.

24      The ALJ solely identified plaintiff's testimony that "she felt weird, she fell,

25  her arms/legs felt like they were asleep, she felt dizzy, she had different tastes in her

26  mouth, and she couldn't carry things and dropped things," and he did not discuss

27  the entirety of plaintiff's subjective complaints, including her complaints of fatigue

28

1    and medication side effects. *Id.* at 22. The ALJ found that the identified testimony

2    concerning the intensity, persistence, and limiting effects of her seizure symptoms

3    was not consistent with the treatment notes from Dr. Lubens, plaintiff's treating

4    physician. *Id.* In doing so, the ALJ noted that Dr. Lubens's records reflect that

5    plaintiff only reported a few seizures prior to age 22. She reported "funny feelings"

6    in a progress note dated April 4, 1997, one seizure on February 10, 1998, and

7    another seizure in a progress note dated May 13, 1998. *Id.* Thereafter, in progress

8    notes beginning May 1998 through June 2001, the ALJ noted that plaintiff did not

9    report any further seizures, and Dr. Lubens stated on June 13, 2001 that plaintiff's

10   seizure disorder remained inactive. *Id.* Further, the ALJ found that even if the

11   "funny feelings" reported by plaintiff were in fact dyscognitive seizures, the

12   medical records only reflect one instance of plaintiff reporting such feelings

13   between April 4, 1997 and June 13, 2001. *Id.*

14          Plaintiff's medical records prior to July 15, 2001 are limited and at times

15   illegible, but the court agrees with the ALJ that plaintiff's symptom testimony is not

16   fully corroborated by the objective medical evidence. The ALJ appears to focus on

17   records from the time plaintiff was age 18 to 22, but then he relied on Dr. Lubens's

18   progress notes beginning on April 4, 1997, prior to plaintiff turning age 18, in

19   finding that the medical records do not support her testimony. *Id.* at 22. In fact, Dr.

20   Lubens's medical records reflect three instances of plaintiff reporting funny or

21   strange feelings prior to her turning 18 – on September 10, 1996, December 3,

22   1996, and April 4, 1997 – and one instance after she turned 18, on May 18, 1998.

23   *Id.* at 636, 639. The ALJ correctly found, however, that plaintiff's reports of

24   seizures and funny feelings do not document the frequency of the seizures. *Id.* at

25   22. Nor do the records reflect any of the symptoms plaintiff alleged from these

26   seizures. *Id.*

27          Plaintiff argues that the Commissioner ignored the March 7, 2018 letter by

28

14

1    Dr. Lubens submitted to the Appeals Council after the administrative hearing.  P.

2    Mem. at 10-11.  In the letter, Dr. Lubens stated that plaintiff had episodes of funny

3    feelings, or focal seizures, that were never controlled and at times caused plaintiff to

4    experience tingling in her left hand and arm.  AR at 849.  The Commissioner did

5    not err in reviewing this additional evidence.  Dr. Lubens's statement only

6    minimally supports the symptoms alleged by plaintiff and does not indicate how

7    often plaintiff experienced these seizures.  *Id.*  As such, the objective medical

8    evidence does not corroborate the extent of limitations claimed by plaintiff.

9         Nevertheless, the lack of corroborating objective medical evidence is not, by

10   itself, a clear and convincing reason for discounting plaintiff's testimony.  *See*

11   *Robbins v. SSA*, 466 F.3d 880, 883 (9th Cir. 2006) ("While an ALJ may find

12   testimony not credible in part or in whole, he or she may not disregard it solely

13   because it is not substantiated affirmatively by objective medical evidence.").

14   Although a lack of objective medical evidence can be one factor in evaluating

15   credibility, the ALJ was required to put forth additional reasons for rejecting

16   plaintiff's testimony for his findings to be supported by substantial evidence.  *See*

17   *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (finding that a lack of

18   corroborative objective medicine may be one factor in evaluating credibility).  The

19   ALJ failed to do so here.

20        Defendant argues that the ALJ properly discredited plaintiff's testimony

21   because he found a lack of objective evidence establishing the frequency of her

22   seizures or physical limitations, a lack of supporting evidence regarding claims of

23   fatigue or side effects from medication, her treatment was effective, and she was

24   able to engage in a variety of activities.  D. Mem. at 9.  These arguments are not

25   persuasive.  With the exception of a lack of objective evidence regarding the

26   frequency of her seizures, the reasons alleged by defendant were not put forth by

27   the ALJ.  The court is constrained to review only the reasoning asserted by the ALJ

28

15

1    and cannot consider post hoc reasoning by defendant. *See Connett v. Barnhart*, 340

2    F.3d 871, 874 (9th Cir. 2003) (noting that a reviewing court "is constrained to

3    review the reasons the ALJ asserts" and finding error where the court affirmed the

4    ALJ's decision "based on evidence that the ALJ did not discuss").

5          First, the ALJ never addressed plaintiff's complaints of fatigue from her

6    seizures and medications prior to July 15, 2001; his only discussion of her fatigue

7    and medication side effects occurred in finding functional limitations after July 23,

8    2015. *See* AR at 22-23. Second, the ALJ found plaintiff's mental impairments

9    were not severe because of her daily activities, but he did not find that her daily

10   activities undermined the many physical symptoms she claimed as a result of her

11   seizures, which is the only testimony the ALJ specifically discredited. *See id.* at 20

12   ("Based on the evidence in the record and the testimony of the claimant, it appears

13   that she engaged in daily activities consistent with a good ability to understand,

14   remember, apply information, concentrate, persist, maintain pace, adapt and manage

15   oneself and demonstrates good social functioning."). Finally, the ALJ never

16   discussed plaintiff's treatments for her seizures, nor their effectiveness, prior to July

17   15, 2001. *See id.* at 22. At most, the ALJ described plaintiff's reported

18   improvements in her seizures between 1998 and 2001, but the ALJ did not credit

19   plaintiff's effective treatment as the reason for this improvement. *Id.*

20         Accordingly, because the ALJ only relied on a lack of corroborating

21   objective medical evidence, the ALJ failed to provide a clear and convincing reason

22   supported by substantial evidence for discounting plaintiff's subjective complaints.

23                                        **V.**

24                          **REMAND IS APPROPRIATE**

25         The decision whether to remand for further proceedings or reverse and award

26   benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888

27   F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this

28

                                          16

1   discretion to direct an immediate award of benefits where: "(1) the record has been

2   fully developed and further administrative proceedings would serve no useful

3   purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting

4   evidence, whether claimant testimony or medical opinions; and (3) if the improperly

5   discredited evidence were credited as true, the ALJ would be required to find the

6   claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir.

7   2014) (setting forth three-part credit-as-true standard for remanding with

8   instructions to calculate and award benefits).  But where there are outstanding

9   issues that must be resolved before a determination can be made, or it is not clear

10  from the record that the ALJ would be required to find a plaintiff disabled if all the

11  evidence were properly evaluated, remand for further proceedings is appropriate.

12  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*,

13  211 F.3d 1172, 1179-80 (9th Cir. 2000).  In addition, the court must "remand for

14  further proceedings when, even though all conditions of the credit-as-true rule are

15  satisfied, an evaluation of the record as a whole creates serious doubt that a

16  claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

17        Here, remand is required to resolve outstanding issues, including the effect of

18  plaintiff's cerebral palsy on her RFC, and the extent to which plaintiff's subjective

19  complaints should be credited and considered in determining her RFC.  On remand,

20  the ALJ shall reconsider the entirety of plaintiff's testimony, and either credit her

21  subjective complaints or provide clear and convincing reasons for rejecting them.

22  The ALJ shall then reassess plaintiff's RFC in light of all of the medical evidence

23  and opinions, and proceed through steps four and five to determine what work, if

24  any, plaintiff was capable of performing.

## VI.

## RECOMMENDATION

27        IT IS THEREFORE ORDERED that Judgment shall be entered

17

1  REVERSING the decision of the Commissioner denying benefits, and

2  REMANDING the matter to the Commissioner for further administrative action

3  consistent with this decision.

4

5  DATED: November 23, 2020

6  _____
   SHERI PYM
7  United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28